UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 3:18-379 |
| VINCENT JOHN INGINO | : | (JUDGE MANNION) |
| Defendant | : | |

**MEMORANDUM**

**I.    INTRODUCTION**

Presently before the court is the defendant Vincent John Ingino's ("Ingino") motion *in limine* to exclude death scene photographs. (Doc. 43). Based on the following, Ingino's motion, (Doc. 43), will be **GRANTED IN PART** and **DENIED IN PART**.

**II.    BACKGROUND**

On November 13, 2018, Ingino was indicted on two counts of distribution and possession with intent to distribute a controlled substance. (Doc. 1). The charges stem from alleged drug transactions that resulted in the death of two individuals, Patrick Pasquariello and Ryan Donahue. (Doc. 1). Ingino pleaded not guilty to the charges against him on November 26, 2018. (Doc. 11).

On March 25, 2019, Ingino filed a motion to suppress statements he made to police on September 17, 2018. (Doc. 22). On July 15, 2019, this court held a hearing on the suppression motion. (Doc. 32). By memorandum and order dated November 14, 2019, the court denied the motion to suppress. (Doc. 36; Doc. 37).

On December 19, 2019, Ingino filed the present motion *in limine*. (Doc. 43).[1] The government filed a brief in opposition on January 2, 2020. On January 3, 2020, Ingino filed a reply brief. (Doc. 51). The matter is now ripe for disposition.

**III.    STANDARD**

Ingino's motion is filed pursuant to Federal Rules of Criminal Procedure 401, 402, and 403. It is axiomatic that "irrelevant evidence is not admissible." Fed.R.Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." Fed.R.Evid. 401.

---

[1] On December 18, 2019, Ingino also filed a motion *in limine* seeking to suppress certain statements he made during his September 17, 2018 interview with the Pennsylvania State Police. (Doc. 41). The court denied this motion and set forth its reasoning on the record during a final pre-trial conference held on December 19, 2019.

Even if evidence is relevant, the court can exclude it if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403. Rule 403 contemplates that some evidence will be prejudicial; however, "[t]he question is whether that prejudice 'substantially outweighs' its probative value." *United States v. Bledsoe*, 449 Fed.App'x 159, 163 (3d Cir. 2011). In a criminal case, "'unfair prejudice' . . . speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

## IV. DISCUSSION

Here, the government has submitted four photographs of the death scenes of the two victims that it proposes to use at trial. Ingino argues these photographs should be suppressed because they are not probative of the ultimate issue in this case, which is whether Ingino provided the victims the drugs that ultimately caused their deaths. Ingino emphasizes that this is a drug case and not a murder case, and notes that he does not dispute that

the victims are dead or their manner of deaths. Ingino asserts that the victims' death certificates "would readily prove the information necessary for the government's case." (Doc. 44, at 2). Finally, Ingino argues that, even if the photographs were relevant, the likelihood they will inflame the minds and passions of the jury outweighs any evidentiary value.

In response, the government argues that it seeks to introduce only a few selected photographs of hundreds that were taken from both scenes. The government contends that these photographs are probative and relevant in that they will allow the jury a complete visual picture of events, corroborate witness accounts, and establish the overall timeline of events. The government contends the photographs shed light on timing because they show that both victims died:

> almost immediately upon use; both [victims] injected the drugs sold by the defendant, as opposed to snorting the drugs as the defendant claims he did; both [victims] have hypodermic needles alongside their bodies—as is evidenced by the photographs; both [victims] purchased their drugs from the defendant within hours of their death[s]; [and] the Government's expert toxicologist relied, in part, on evidence of swiftness of death as depicted in the photographs reaching his opinion.

(Doc. 50, at 5-6).

- 4 -

The government analogizes to *United States v. Rodriguez*, No. 19-10427, 2019 WL 6918504 (11th Cir. Dec. 19, 2019), wherein the Eleventh Circuit held that a district court's refusal to allow the government to show child pornography to a jury was in error despite the defendant's willingness to stipulate that the videos and images were in fact child pornography because the videos were not "extrinsic" to the offenses charged, but rather "central to the story of [the defendant]'s conduct . . . ." *Id.* at *5.

The government notes that, while the defendant in *Rodriguez* stipulated that the materials were child pornography, he did not stipulate to his knowledge of it. The government argues that, similarly, here, while Ingino stipulates that the victims died of fentanyl-laced heroin, "he has not stipulated to the fact that the drugs he sold to both victims within a 24-hour period of time and used by both [victims] within hours of their deaths, were the drugs that caused their deaths." (Doc. 50, at 10 n.3). The government further argues that, unlike child pornography, the photographs here are not inherently disturbing but instead are evidence of the "concrete and particular" which "has force beyond any linear scheme of reasoning" and will help present the full picture of events. (Doc. 50, at 12) (quoting *Old Chief*, 519 U.S. at 191).

In his reply brief, Ingino responds that how swiftly death occurred is not an element in this case and, even if it were, the photographs do not prove that death occurred swiftly. Further, Ingino argues that the photographs the government has selected do not depict drugs, hypodermic needles, or other drug paraphernalia around the victims' bodies as the government contends and, moreover, the method of drug administration is not at issue. To the extent that the presence of syringes is relevant, Ingino urges that this fact can be discussed through testimony or without depicting the victims' bodies.

Here, the court has reviewed the four photographs at issue. Three of the photographs depict the victims' bodies slumped forward on or near their beds and include various angles of their respective bedrooms. Although these three photographs are theoretically relevant, they are unduly prejudicial and unnecessary in light of the fact that Ingino does not dispute that the victims are deceased or the cause and manner of their deaths. Thus, because Ingino has stipulated that both victims died as a result of ingesting a combination of heroin and fentanyl, he has already agreed to the only facts material to the elements of the crimes charged which these photographs would tend to prove.

The court disagrees with the government's assertion that these three photographs are necessary because they indicate the timing of the deaths, as the swiftness of death is not an element of the crimes charged. Moreover, both victims could have died in the positions their bodies were found at any point after ingesting the drugs and, thus, the positions of their bodies in death does not tend to prove that those were the positions in which they ingested the drugs. To the extent that the government desires to discuss the potency of the drugs, it may do so through lab reports and expert testimony. Accordingly, the motion to suppress, (Doc. 43), is **GRANTED** with regard to these three photographs, and the government will be prohibited from introducing them.

As to the remaining photograph, which is zoomed in on the body of one of the victims, depicting only a portion of his upper shirtless torso and legs, under which appears to be a hypodermic syringe, the motion to suppress, (Doc. 43), is **DENIED** with respect to this photograph. This photograph is not unduly prejudicial and is relevant to the manner in which the victim ingested the drugs. Accordingly, the government will be permitted to introduce this photograph as an exhibit at trial.

Based on the foregoing, Ingino's motion *in limine*, (Doc. 43), shall be **GRANTED IN PART** and **DENIED IN PART** as set forth in the above analysis. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: January 9, 2020**
18-379-02