IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA   :

    V.                    :       3:CR-18-379

VINCENT JOHN INGINO      :    (JUDGE MANNION)

**DEFENDANT'S BRIEF IN OPPOSITION TO GOVERNMENT'S MOTION
IN LIMINE REGARDING INTENT TO USE "404(b)-TYPE" EVIDENCE**

      Defendant Vincent Ingino ("Mr. Ingino"), by and through his attorney,

Shelley L. Centini, Esq., hereby files his brief in opposition to the

government's motion in limine regarding intent to use "404(b)-type"

evidence.  (Doc. 55).

**Relevant Background to Motion**

      Mr. Ingino is charged by indictment with Distribution and Possession

with Intent to Distribute a Controlled Substance to two individuals during a

very specific time frame:  It is alleged that Mr. Ingino delivered

heroin/fentanyl to "P.P." on August 10, 2018 and to "R.D." on or about

August 11-12, 2018.  (Doc. 1).  It is further alleged that these specific

deliveries by Mr. Ingino were the "but for" cause of the deaths of "P.P." and

"R.D."

      Mr. Ingino was interviewed by Pennsylvania State Police on

September 17, 2018.  During the interview, Mr. Ingino admitted that he sold

"P.P." 8-9 bags of heroin for $59.00-$69.00 at approximately 7:00 p.m. on August 10, 2018, almost 24 hours before "P.P." was found unresponsive by his girlfriend.  Mr. Ingino stated that the bags he sold "P.P." may have had a rainbow stamp on them.  The bags of heroin found at "P.P.'s" death scene were stamped, "Captain America."

During his interview, Mr. Ingino also admitted he sold "R.D." 5 bags of heroin for $40.00 at approximately 11:00 p.m. on August 11, 2018, approximately 15 hours prior to "R.D." being found unresponsive by his mother.  Different bags of heroin were found at "R.D.'s" death scene. Some were stamped "Rush Hour" and some were stamped "Raptor."

Toxicology results from the autopsies of "P.P." and "R.D." indicate the presence of substances, including but not limited to acetyl fentanyl, in the blood of "P.P." which were not present in the blood of "R.D."

Therefore, because Mr. Ingino admitted to delivering heroin to both "P.P." and "R.D." within the time frame in the indictment, the only issue at trial is whether the government can prove, beyond a reasonable doubt, that the drugs Mr. Ingino delivered to "P.P." and "R.D." during that time frame were the drugs that killed them—i.e., the "but for" cause of their deaths.

However, the government seeks to admit text message evidence suggesting that Mr. Ingino sold drugs to "P.P." over the course of 2 months

prior to his death.  The government also seeks to admit evidence that Mr. Ingino attempted to conceal his "drug dealing" from his girlfriend, Lindsey Hartman, and that Mr. Ingino provided Ms. Hartman with drugs both before and after the deaths of "P.P." and "R.D."[1]

This evidence is not appropriate for admissibility under *Fed.R.Evid.* 404(b), is not relevant, and any marginal relevance would lead to unfair prejudice, confusion of issues, and/or misleading the jury.

## Argument

Lindsey Hartman

Evidence that Mr. Ingino provided Ms. Hartman with drugs or tried to conceal his drug dealing from Ms. Hartman serves no legitimate evidentiary purpose in this case.  Mr. Ingino does not dispute that he sold drugs to "P.P." and "R.D."  The only reason the government seeks admission of evidence that Mr. Ingino also provided drugs to Ms. Hartman is to prove Mr. Ingino's propensity to deal drugs.  Introduction of such evidence is prohibited by *Fed.R.Evid.* 404(b) because it goes to show "that on a

---

[1] In paragraph 4 of its Motion, the government states that Lindsey Hartman had a recorded conversation with Mr. Ingino on August 28, 2018 (two weeks after the deaths of "P.P." and "R.D.") where he told her to come home because he needed to use her car to drive to New Jersey.  On this day, Ms. Hartman was found in possession of drugs.  These facts have zero relevance to whether the drugs Mr. Ingino provided to "P.P." or "R.D." (two weeks prior) were the drugs that killed them.

particular occasion [he] acted in accordance with the character."
*Fed.R.Evid.* 404(b)(1).

The government does not, because it cannot, explain how evidence regarding Mr. Ingino providing drugs to Ms. Hartman would go to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" regarding the deaths of "P.P." and "R.D." and would therefore be admissible under *Fed.R.Evid.* 404(b)(2).

Evidence that Mr. Ingino attempted to "conceal" his drug dealing from Ms. Hartman is also an inappropriate introduction of character evidence regarding Mr. Ingino's truthfulness or untruthfulness in violation of *Fed.R.Evid.* 608(a).

This evidence is wholly irrelevant.  Any marginal relevance is substantially outweighed by a danger of unfair prejudice, confusing the issues, and/or misleading the jury in violation of *Fed.R.Evid.* 401, 402, and 403.

Historical Text Messages with "P.P."

The government seeks to introduce text messages between Mr. Ingino and "P.P." for two months prior to "P.P.'s" death.  The government argues that these messages are "intrinsic" evidence not subject to analysis under *Fed.R.Evid.* 404(b).  The messages are not intrinsic, because they

4

do not either (1) directly prove the charged offense—i.e., that the drugs Mr. Ingino sold "P.P." on August 10, 2018 and "R.D." on August 11-12, 2018 were the "but for" cause of their deaths; or (2) constitute "uncharged acts performed contemporaneously with the charged crime that facilitated the commission of the charged crime."  Drug transactions completed months prior are not "contemporaneous."  *See United States v. Green*, 617 F.3d 233, 248-49 (3d Cir. 2010).  Internal citations omitted. (Regarding the two narrow categories of evidence categorized as "intrinsic").  Therefore, this evidence must be analyzed under *Fed.R.Evid.* 404(b).

Under a *Fed.R.Evid.* 404(b) analysis, historical drug transactions between "P.P." and Mr. Ingino are classic propensity evidence inadmissible under *Fed.R.Evid.* 404(b)(1).  The government only seeks to use this evidence to prove that Mr. Ingino provided drugs to "P.P." on August 10, 2018 because that is what he does, and on August 10, 2018 Mr. Ingino was acting in conformity with his character.

Evidence that Mr. Ingino provided drugs to "P.P." months before his death does not show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" regarding providing drugs to "P.P.' on August 10, 2018 and is therefore be admissible under *Fed.R.Evid.* 404(b)(2).

Any drug transactions which occurred months before August 10, 2018 have no relevance to the transaction on that date, and any marginal relevance is substantially outweighed by a danger of unfair prejudice, confusing the issues, and/or misleading the jury in violation of *Fed.R.Evid.* 401, 402, and 403.

## <u>Conclusion</u>

Evidence regarding historical drug transactions between "P.P.," Lindsey Hartman, and Mr. Ingino and Mr. Ingino's attempts to "conceal" his "drug dealing" from Ms. Hartman should be excluded for the reasons stated more fully herein.

Respectfully Submitted,

<u>S/ Shelley L. Centini, Esq.</u>
Counsel for Defendant
88 North Franklin Street
Wilkes-Barre, PA  18701
(570) 829-4860

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA　　　　:　　NO.  3:18-cr-379

　　　V.　　　　　　　　　　　　　:

VINCENT JOHN INGINO,　　　　　　:
　　　　　　Defendant

　　　　　　　　　　　　　　　　:　　(Judge Mannion)

## **CERTIFICATE OF SERVICE**

　　　SHELLEY L. CENTINI, ESQ., hereby certifies that on January 13,

2020, she served a copy of Defendant's Brief in Opposition To

Government's Motion in Limine Regarding Intent to Use "404(b)-type"

Evidence on Assistant United States Attorney Michelle Olshefski, counsel

for the United States via this Court's electronic filing system.

　　　　　　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　S/ Shelley L. Centini, Esq.
　　　　　　　　　　　　　　　　88 North Franklin Street
　　　　　　　　　　　　　　　　Wilkes-Barre, PA  18702
　　　　　　　　　　　　　　　　(570) 829-4860
　　　　　　　　　　　　　　　　Attorney for Defendant